UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHELLE FOWLER,

       Plaintiff,                    CIVIL ACTION NO. 12-15286

    v.                                 DISTRICT JUDGE DENISE PAGE HOOD

                                          MAGISTRATE JUDGE MARK A. RANDON
COMMISSIONER OF
SOCIAL SECURITY,

       Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS MOTIONS FOR SUMMARY JUDGMENT (DKT. NOS. 11, 17)**

Plaintiff Michelle Fowler challenges the Commissioner of Social Security's ("the Commissioner") final denial of her benefits application. Cross motions for summary judgment are pending (Dkt. Nos. 11, 17). Plaintiff also filed a response to the Commissioner's motion (Dkt. No. 18). Judge Denise Page Hood referred the motions to this Magistrate Judge for a Report and Recommendation (Dkt. No. 3).

## I.    RECOMMENDATION

Because the Administrative Law Judge ("ALJ") did not consider the opinion of Plaintiff's treating physician regarding her need to be absent from work, this Magistrate Judge **RECOMMENDS** that Plaintiff's motion for summary judgment be **GRANTED**, the Commissioner's motion be **DENIED**, and the case be **REMANDED** to the Commissioner for further proceedings consistent with this recommendation.

**II.      DISCUSSION**

   *A.      Framework for Disability Determinations*

Under the Social Security Act, (the "Act") Disability Insurance Benefits and Supplemental Security Income are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability," in relevant part, as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps . . . . If the

analysis reaches the fifth step without a finding that the claimant is disabled, the burden transfers to the [Commissioner]." *Preslar v. Sec'y of HHS*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### B. Standard of Review

This Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited such that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal quotation marks omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses") (internal quotation marks omitted)). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted); *see also Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted) (explaining that if the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion"); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts" (internal quotation marks omitted)).

When reviewing the Commissioner's factual findings for substantial evidence, this Court is limited to an examination of the record and must consider that record as a whole. *Bass v.*

*McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007); *Wyatt v. Sec'y of HHS*, 974 F.2d 680, 683 (6th Cir. 1992). The Court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston*, 245 F.3d at 535. There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all the evidence without directly addressing in [her] written decision every piece of evidence submitted by a party") (internal quotation marks omitted). Further, this Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass*, 499 F.3d at 509; *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant").

### III. REPORT

#### A. *Administrative Proceedings*

Plaintiff applied for disability insurance benefits and supplemental security income on March 18, 2010, alleging she became disabled on February 20, 2010 (Tr. 10). After the Commissioner initially denied Plaintiff's application, she appeared with counsel for a hearing before ALJ Mark B. Greenberg, who considered the case *de novo*. In a written decision, the ALJ found Plaintiff was not disabled (Tr. 10-20). Plaintiff requested an Appeals Council review (Tr. 6). On September 27, 2012, the ALJ's findings became the Commissioner's final administrative decision when the Appeals Council declined further review (Tr. 1-4).

#### B. *ALJ Findings*

The ALJ applied the five-step disability analysis to Plaintiff's claim and found at step one that she had not engaged in substantial gainful activity since her alleged onset date in February of 2010 (Tr. 12).

At step two, the ALJ found that Plaintiff had the following "severe" impairments: degenerative disc disease,[1] left hip dysplasia,[2] history of hypothyroidism, shoulder impingement, anxiety, and depression (Tr. 13).

At step three, the ALJ found that Plaintiff did not have impairments that met or medically equaled one of the listings in the regulations (Tr. 13).

Between steps three and four, the ALJ found that Plaintiff had the Residual Functional Capacity ("RFC") to perform:

> sedentary work[3] . . . except she can lift and/or carry slightly less than ten pounds frequently. She would require a sit/stand option. [Plaintiff] must use a cane for walking distances greater than 100 yards or for uneven terrain but she can carry small objects with [her] free hand. She can occasionally use foot controls with [her] left lower extremity and above shoulder level with [her] right upper

---

[1] "Degenerative disc disease is not really a disease but a term used to describe the normal changes of the discs in the spine as a person ages. The breakdown of the discs can result in back or neck pain, as well as osteoarthritis, herniated disc, or spinal stenosis." *See* http://www.webmd.com/hw-popup/degenerative-disc-disease (last visited October 25, 2013).

[2] "Developmental dysplasia of the hip [("DDH")] is a congenital (present at birth) condition of the hip joint. It occurs once in every 1,000 live births. The hip joint is created as a ball and socket joint. In DDH, the hip socket may be shallow, letting the 'ball' of the long leg bone, also known as the femoral head, slip in and out of the socket. The 'ball' may move partially or completely out of the hip socket." *See* http://www.lpch.org/DiseaseHealthInfo/HealthLibrary/orthopaedics/ddh.html (last visited October 25, 2013).

[3] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a); *see also* SSR 96-9p, "[t]he full range of sedentary work requires that an individual be able to stand and walk for a total of approximately [two] hours during an [eight]-hour workday."

>extremity but frequently reach at shoulder level with [her] right upper extremity. [Plaintiff] can occasionally[] balance, stoop, kneel, and climb ramps or stairs but never climb ladders, ropes, or scaffolds, crouch, or crawl. She should avoid concentrated exposure to vibrations or hazards. [Plaintiff] can perform simple, routine, repetitive tasks with occasional interaction with others.

(Tr. 15).

At step four, the ALJ found that Plaintiff could not perform her past relevant work as a pharmacy technician or preschool teacher (Tr. 18).

At step five, the ALJ found Plaintiff was not disabled, because there are a significant number of jobs available in the national economy that Plaintiff could perform, such as security system monitor (400 jobs available in Michigan; 17,000 jobs available nationally), parking lot attendant/cashier (1,500 jobs available in Michigan; 50,000 jobs available nationally), or inspector (700 jobs available in Michigan; 13,000 jobs available nationally) (Tr. 19-20). Alternatively, the ALJ found at step five that:

>if the [RFC] included occasional reaching in any direction with the right upper extremity, or if the individual could not reach away from the body, lift more than [five] pounds or forcefully grip on the right, with no vibrating tools and a sit/stand option, the vocational expert testified that given these factors, the individual would be able to perform the requirements of representative occupations such as those listed above in the same numbers. However, the vocational expert stated he would eliminate the inspector occupation.

(Tr. 20).

### C. Administrative Record

#### 1. Plaintiff's Hearing Testimony and Statements[4]

Plaintiff has hip dysplasia; back and shoulder problems; trouble concentrating and sleeping; degenerative disc disease; and, depression, anxiety, and carpal tunnel syndrome in her

---

[4] Plaintiff's testimony before the ALJ reflects her subjective view of her work history, medical condition, abilities and limitations. It is set forth from Plaintiff's perspective; it is not a factual finding of the ALJ or this Magistrate Judge.

-6-

right hand (Tr. 33-35, 37-38, 43).  Plaintiff's shoulder hurts when she lies on her right side, and her hip hurts when she lies on her left side (Tr. 35).  Plaintiff needs to change positions frequently; her medication makes her tired and prohibits her from thinking clearly.  Plaintiff takes a nap from 1:00 p.m. until 3:00 or 3:30 p.m. every day (Tr. 34-35).  Her level of pain varies: if she does not do anything, her pain is 5-6/10; otherwise, her pain is 7-8/10 (Tr. 33-34).

Plaintiff attempted to work in December of 2010, but was unable to perform any repetitive movements, lift anything with her right arm, answer the phone, or lift her arm above shoulder level (Tr. 30-31).  Plaintiff cannot sit in a movie theater; she rents movies so she can get up and move around (Tr. 34).  In addition, she cannot cook, clean, hunt, or snowmobile (Tr. 32, 41-42).

Despite her limitations, Plaintiff can read, watch television, make a sandwich, load the dishwasher, lift a 2-liter bottle of pop, and go to the post office.  She occasionally goes out to dinner, can use the computer for 10-15 minutes, drive in 30-minute increments, and do minimal grocery shopping (Tr. 31-34, 39).

### 2.   Vocational Expert

The ALJ asked a vocational expert ("VE") to assume a hypothetical individual of Plaintiff's age, education, and vocational experience who is limited to sedentary work.  The individual can frequently lift and carry slightly less than 10 pounds and needs a cane to walk more than 100 yards or on uneven terrain.  The individual can carry small objects with her free hand; cannot climb ladders, ropes, or scaffolds; cannot crouch or crawl; and, can perform other postural activities occasionally.  Further, the individual cannot have concentrated exposure to vibration or hazards; requires simple, routine, repetitive tasks; can have only occasional interaction with others; can occasionally operate leg controls and foot controls on the left side; and, can frequently perform work above the shoulder level on the right side (Tr. 46).  The VE

testified that such an individual could perform work as a security surveillance system monitor (400 jobs available in Michigan; 17,000 jobs available nationally), parking lot attendant/cashier (1,500 jobs available in Michigan; 50,000 jobs available nationally), or inspector (700 jobs available in Michigan; 13,000 jobs available nationally) (Tr. 46-47).

In a second hypothetical, the ALJ added the option to sit and stand at will, and limited reaching above the shoulder level on the right side to occasional with frequent reaching at the shoulder level (Tr. 47). The VE testified that the individual could still perform the identified jobs (Tr. 47).

In a third hypothetical, the ALJ added that the individual could only perform occasional reaching in any direction on the right side (Tr. 47). The VE testified that the inspector job would be eliminated (Tr. 47).

The following exchange then occurred between the ALJ and the VE regarding Plaintiff's limitations as found by Paul LeClair, M.D.:

> ALJ: Okay. Okay. The last hypothetical that I'm going to provide you comes from Dr. LeClaire[sic]. It's from Exhibit 24F, and he summarizes [Plaintiff's] limitations as follows: no reaching away from the body with – on the right side; no repetitive use of the right arm in any fashion; no lifting more than five pounds with the right arm on an occasional basis; no above shoulder level reaching with the right arm; no forceful or repetitive gripping or grasping on the right; no vibrating tools on the right; sit/stand option; no lifting more than ten pounds; and no repetitive bending, stooping, or twisting of the trunk on a permanent – on a repetitive basis. It doesn't indicate any limitations in standing or walking on that statement, but hold on a second. 751 – okay. So, standing or walking, it looks like she's at sedentary. So, sedentary with the other limitations as well. Would there be any occupations that that individual could perform?
>
> VE: It would still be the same answer as your last hypothetical. But if he's not restricting her from dealing with people, then there's at least one other occupation that would fit that.
>
> ALJ: Okay. So, there would be one that you would add?
>
> VE: Correct.

-8-

ALJ: Okay. There are some additional checklist limitations – make this the next hypothetical – where he says occasional – I don't remember if the, the – he put this on the first page – occasional grasping on the right and frequent – okay. All right. So, he's adding frequent fine or gross manipulation on the left –

VE: Bringing it down to frequent or eliminating frequent?

ALJ: Bringing it – well, there wasn't any before on the left.

VE: Okay. So, down to frequent?

ALJ: Yeah.

VE: Okay.

ALJ: And let's see. What else is he doing. Everything else seems to fit the rest with – oh, okay. Moderate restriction to vibration, and everything else seems the same. So, adding the left manipulation, does that affect your answers?

VE: That'd be no more, be no more than frequent?

ALJ: Yeah.

VE: It would still be the same answer as the previous two.

(Tr. 48-49). Finally, the VE testified that the security surveillance system monitor job would be eliminated if the individual could not predictably stay on task during the day (Tr. 52), and the parking lot attendant/cashier job would be eliminated if the individual was limited to only occasional interaction with others, and had to take rest periods of between 2 to 2 ½ hours on a daily basis during the work-day (Tr. 55-56).

### D. Plaintiff's Claims of Error

#### 1. Treating Source Rule

-9-

Plaintiff argues that the ALJ erred by adopting the opinion of a non-examining physician – who did not review Dr. LaClair's findings – over Dr. LaClair's findings. The error – *if any* – was harmless. First, the Sixth Circuit has recently made clear that opinions on issues reserved to the Commissioner are not entitled to any particular weight:

> [A] treating physician's opinion is only entitled to . . . deference when it is a *medical opinion*. If the treating physician instead submits an opinion on an issue reserved to the Commissioner – such as whether the claimant is disabled, unable to work, the claimant's RFC, or the application of vocational factors – his decision need only explain the consideration given to the treating source's opinion. The opinion, however, is not entitled to any particular weight.

*Johnson v. Comm'r of Soc. Sec.*, ___ F. App'x ___, 2013 WL 5613535, at *7 (6th Cir. Oct. 15, 2013) (emphasis in original) (internal citations and quotations omitted). Therefore, Dr. LaClair's opinion on the RFC is not entitled to any particular weight.

Second, the ALJ based the fourth hypothetical question upon Dr. LaClair's RFC determination, and the VE testified that an individual with those limitations could work. Thus, as in *Fraley v. Astrue*, No. 08-95-GWU, 2009 WL 1320902, at *5 (E.D. Ky. May 12, 2009), "the ALJ based the alternative second hypothetical question upon [the doctors'] physical restrictions and incorporated all of [their] specific findings. Thus, any error in rejecting the restrictions reported by [the doctors] was harmless."

However, Dr. LaClair also found that Plaintiff would frequently miss work during episodic flare-ups (Tr. 670). Although the ALJ relied on the VE's testimony in determining that Plaintiff was not disabled (Tr. 20), the frequency with which Plaintiff would miss work was not included in the hypothetical to the VE or in the ALJ's analysis. The Sixth Circuit has also recently instructed ALJs on how to assess medical opinions such as Dr. LaClair's:

> Under the pertinent regulations, more weight is generally given to the opinion of a treating physician. As long as the treating physician's opinion regarding the nature and severity of the claimant's impairment is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence, it will be given controlling weight. If the ALJ chooses not to give the treating physician's opinion controlling weight, he or she must determine what weight to give it by looking at various factors, including the length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship; the supportability of the opinion; its consistency with the record as a whole; the specialization of the physician or doctor rendering the opinion; and other factors that support or contradict the opinion.

*Johnson*, 2013 WL 5613535, at *7 (internal citations and quotations omitted). While the ALJ gave "little weight" to Dr. LaClair's RFC determination (Tr. 17-18), he did not analyze – or even mention – Dr. LaClair's opinion that Plaintiff would miss work, as required by *Johnson*. As such, this case should be remanded to determine the amount of weight to afford Dr. LaClair's May 6, 2010 opinion, and whether Plaintiff's absenteeism should have been included in the ALJ's hypothetical to the VE.

### 2. Credibility Determination

Plaintiff next relies on *Bjornson v. Astrue*, 671 F.3d 640 (7th Cir. 2012) to support her argument that the ALJ's use of boilerplate language was improper when he made his credibility determination.[5]

The ALJ in *Bjornson* stated the following regarding the claimant's credibility:

> [a]fter careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments would reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to

---

[5]Plaintiff also argues that the ALJ failed to consider her work history when assessing her credibility, but the ALJ noted that Plaintiff has a good work history (Tr. 17).

-11-

>
> the extent they are inconsistent with the above residual functional capacity assessment.

*Bjornson*, 671 F.3d at 644.  The *Bjornson* court identified two problems with the boilerplate language: (1) the assessment of the claimant's RFC came after the boilerplate; and, (2) the passage implied that the ability to work is determined first, then used to determine the claimant's credibility; however, the assessment of a claimant's ability to work will often depend heavily on the credibility of her statements concerning the "intensity, persistence and limiting effects" of her symptoms.  *Id.* at 645.  The court added:

> Such boilerplate language fails to inform us in a meaningful, reviewable way of the specific evidence the ALJ considered in determining that claimant's complaints were not credible.  More troubling, it appears that the Commissioner has repeatedly been using this same boilerplate paragraph to reject the testimony of numerous claimants, without linking the conclusory statements contained therein to evidence in the record or even tailoring the paragraph to the facts at hand, almost without regard to whether the boilerplate paragraph has any relevance to the case.

*Id.* (quoting *Hardman v. Barnhart*, 362 F.3d 676, 679 (10th Cir. 2004)).  Although Plaintiff relies on case law from the Seventh Circuit, this Magistrate Judge looks to Sixth Circuit precedent to determine whether the ALJ properly assessed Plaintiff's credibility.  In our circuit:

> [c]redibility determinations regarding the applicant's subjective complaints of pain rest with the ALJ and are afforded great weight and deference as long as they are supported by substantial evidence.  In assessing an individual's credibility, the ALJ must [first] determine whether a claimant has a medically determinable physical or mental impairment that can reasonably be expected to produce the symptoms alleged. . . . Next, the ALJ must evaluate the intensity, persistence, and functional limitations of the symptoms by considering objective medical evidence, as well as: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (5) treatment, other than medication, received for relief of pain or other symptoms; (6) any measures used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions.

*Johnson,* 2013 WL 5613535, at *8 (internal citations and quotations omitted). The ALJ does not need to address *every* factor; he need only identify specific reasons for his credibility determination – supported by evidence in the record – and clearly state the weight he gave to Plaintiff's statements and the reasons for that weight. *Potter v. Colvin*, No. 3:12-CV-202, 2013 WL 4857731, at *13 (E.D. Tenn. Sept. 11, 2013) (citing SSR 96-7p, 1996 WL 374186, at *2 (1996); *Tell v. Comm'r of Soc. Sec.*, No. 11-15071, 2012 WL 3679138, at *11 (E.D. Mich. July 13, 2012)).

Here, the ALJ first determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" (Tr. 16). Next, the ALJ appropriately explained why he found Plaintiff "partially credible" (Tr. 17). For example, despite Plaintiff's complaints of shoulder, back and hip pain, her lumbar and cervical spine MRIs were normal; Plaintiff's thoracic spine MRI was normal (except for mild narrowing); in January of 2009, her right hip scan was unremarkable; she had no complaints of neck or upper back pain in 2010; she had a 30% reduction in her hip pain in January of 2010; Plaintiff's "back pain [was] quieting down" in January of 2011; an epidural injunction in March of 2010 relieved Plaintiff's leg pain; and, her anxiety medication helped with her depression (Tr. 16-17).

This Magistrate Judge finds the ALJ's credibility determination is supported by substantial evidence and should not be disturbed on appeal.[6]

---

[6]Plaintiff argues that the ALJ's erred by finding her testimony not entirely credible because she missed physical therapy sessions (Tr. 16). Even if the this was error, it does not warrant reversal. The Sixth Circuit has held that "even if an ALJ's adverse credibility determination is based partially on invalid reasons, harmless error analysis applies to the determination, and the ALJ's decision will be upheld as long as substantial evidence remains to support it." *Johnson*, 2013 WL 5613535, at *9 (citing *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012). As explained above, this Magistrate Judge finds substantial evidence supports the ALJ's credibility determination.

### 3. Significant Number of Available Jobs

Finally, Plaintiff argues that "the ALJ found that [she] could still perform work, but he said that there were 2,600 jobs in the State of Michigan that [she] could have performed [and] [t]his is an insufficient number in an economy of 4,000,000 or more jobs" (Dkt. No. 11 at p. 17 (CM/ECF)). Plaintiff's argument lacks merit. "First, the number of jobs that contributes to the 'significant number of jobs' standard looks to the national economy – not just a local area." *Harmon v. Apfel*, 168 F.3d 289, 292 (6th Cir. 1999). Here, there were 80,000 jobs available in the national economy.

Second, "when there is testimony that a significant number of jobs exists for which a claimant is qualified, it is immaterial that this number is a small percentage of the total number of jobs in a given area." *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988)

Finally, the Regulations explain the significant numbers requirements:

> Work exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications. Isolated jobs that exist only in very limited numbers in relatively few locations outside of the region where you live are not considered "work which exists in the national economy". We will not deny you disability benefits on the basis of the existence of these kinds of jobs. If work that you can do does not exist in the national economy, we will determine that you are disabled. However, if work that you can do does exist in the national economy, we will determine that you are not disabled.

20 C.F.R. § 404.1566(b). And, the Sixth Circuit explained this definition:

> We are not blind . . . to the difficult task of enumerating exactly what constitutes a "significant number." We know that we cannot set forth one special number which is to be the boundary between a "significant number" and an insignificant number of jobs. The figure that the ALJ here found is *not* that magic number; the 1350 figure is to be viewed in the context of this case only. A judge should consider many criteria in determining whether work exists in significant numbers, some of which might include: the level of claimant's disability; the reliability of

-14-

>the vocational expert's testimony; the reliability of the claimant's testimony; the distance claimant is capable of travelling[sic] to engage in the assigned work; the isolated nature of the jobs; the types and availability of such work, and so on. The decision should ultimately be left to the trial judge's common sense in weighing the statutory language as applied to a particular claimant's factual situation.

*Hall*, 837 F.2d at 275 (emphasis in original). These factors are only suggestions; the ALJ does not have to explicitly consider each of them. *Harmon*, 168 F.3d at 292. "The Act, its legislative history and the regulations make it clear that the test is whether work exists in the national economy, not in plaintiff's neighborhood." *Id.*

After reviewing the evidence, the ALJ determined that Plaintiff could perform 2,600 jobs in Michigan and 80,000 jobs nationally dispute her limitations, and that those numbers constituted the existence of work in significant numbers. This Magistrate Judge finds the ALJ's decision is supported by substantial evidence and should not be disturbed on appeal.

Notably, courts have found as few as 200 jobs regionally may constitute significant work in the national economy. *Putman v. Astrue*, No. 4:07-cv-63, 2009 WL 838155, at *3 (E.D. Tenn. March 30, 2009) (200-250 available jobs in the region and 75,000 jobs in the national economy constitutes significant work in the national economy) (citing *Craigie v. Bowen*, 835 F.2d 56, 58 (3rd Cir. 1987) (200 jobs in region is significant number of jobs); *Allen v. Bowen*, 816 F.2d 600, 602 (11th Cir. 1987) (174 jobs in region and 80,000 nationally); *McCallister v. Barnhart*, 2004 WL 1918724, at *5 (D. Me. Aug. 26, 2004) (372 jobs regionally and 50,955 nationally)).

### IV. CONCLUSION

Because the ALJ did not consider the opinion of Plaintiff's treating physician regarding her need to be absent from work, this Magistrate Judge **RECOMMENDS** that Plaintiff's motion

for summary judgment be **GRANTED**, the Commissioner's motion be **DENIED**, and the case be **REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g).

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan v. Comm'r Soc. Sec.*, 474 F.3d 830 (6th Cir. 2006) (internal quotation marks omitted); *Frontier*, 454 F.3d at 596-97. Objections are to be filed through the Case Management/Electronic Case Filing (CM/ECF) system or, if an appropriate exception applies, through the Clerk's Office. E.D. Mich. LR 5.1. A copy of any objections is to be served upon this Magistrate Judge but this does not constitute filing. E.D. Mich. LR 72.1(d)(2). Once an objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be filed within seven (7) days of service of the response. E.D. Mich. LR 72.1(d)(3), (4).

                 s/Mark A. Randon
                 Mark A. Randon
                 United States Magistrate Judge

Dated: October 30, 2013

### *Certificate of Service*

*I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, October 30, 2013, by electronic and/or ordinary mail.*

                 *s/Eddrey Butts*
                 *Case Manager for Magistrate Judge Mark A. Randon*